UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COLLIERS INTERNATIONAL –
ATLANTA, LLC,

        Plaintiff,

    v.

MAXUM INDEMNITY COMPANY,

        Defendant.

CIVIL ACTION NO.

1:19-CV-05016-SEG

## O R D E R

This case is before the Court on Defendant Maxum Indemnity Company's Motion for Leave to Amend its Answer and Affirmative Defenses (Doc. 67), Plaintiff Colliers International – Atlanta, LLC's Motion for Partial Summary Judgment (Doc. 69), and Defendant Maxum Indemnity Company's Motion for Summary Judgment (Doc. 74). Having carefully considered the parties' positions and the applicable law, the Court enters the following order.

## I.    Background

Plaintiff, Colliers International – Atlanta, LLC ("Colliers"), is a company that provides commercial real estate services. (Doc. 86 ¶ 1.) Defendant, Maxum Indemnity Company ("Maxum"), issued a professional liability policy to Colliers (the "Policy"), wherein Maxum agreed to provide insurance coverage for Colliers' errors and omissions in the performance of its professional

services.  (*Id.* ¶ 2.)  This is a contract case in which Colliers—which paid significant sums of money to defend itself against allegations of fraud in a Texas state court case—alleges that Maxum shirked, in part, its contractual duty to pay those expenses.  The instant case might be thought of as "part two" of the parties' dispute regarding whether Maxum should have paid a larger share of Colliers' defense costs under the Policy.  "Part one" was an earlier declaratory judgment action, *Maxum Indemnity Company v. Colliers International – Atlanta, LLC, et al.*, No. 18-cv-1236 (N.D. Ga.), in which Maxum sought a declaration from this Court that it was not obligated to cover the claim asserted against Colliers.  In that prior action, this Court sided with Maxum, finding that because Colliers failed to timely report the claim, it would not be covered under the Policy.   In this case, Colliers posits that notwithstanding this Court's prior ruling, Maxum had a duty to defend Colliers *up until* the time of the Court's declaratory judgment and that Maxum breached that duty in bad faith.  The following undisputed events are relevant to the present dispute:

- On March 30, 2016, attorneys for Mattress Firm, Inc. ("Mattress Firm")—one of Colliers' customers—notified Colliers of a potential claim Mattress Firm had against it for alleged fraudulent conduct (the "Mattress Firm Claim").   (Doc. 78-1 ¶¶ 6-7; Doc. 86 ¶ 5.)

Mattress Firm alleged that Colliers executive, Alexander Deitch, conducted a scheme involving bribery, kickbacks, and self-dealing relating to Colliers' real estate brokerage services. (Doc. 34-10 at 3.)

- On June 29, 2017, Colliers first reported the Mattress Firm Claim to Maxum. (Doc. 78-1 ¶ 10.)

- On July 28, 2017, Colliers' insurance broker informed Maxum that Colliers intended to retain Lewis Brisbois as defense counsel and provided Maxum the hourly rates Lewis Brisbois would charge. (Doc. 86 ¶ 11.)

- On July 31, 2017, a Maxum representative emailed Colliers' broker, explaining that Maxum was reviewing the Mattress Firm Claim to determine whether there would be coverage. (*Id.* ¶ 12; Doc. 69-6 at 1.) The email also stated, "[t]o the extent that coverage is in place, the Policy is a duty to defend policy which means that Maxum would seek to assign counsel to defend Colliers." (Doc. 69-6.)

- Between August 2017 and October 2017, Colliers' broker sent multiple inquiries to Maxum's representative seeking further information as to whether Maxum would be covering the Mattress

Firm Claim.  (Doc. 86 ¶¶ 13-18.)  In response to each email, Maxum's representative stated that Maxum was still reviewing the claim and that a coverage decision would be issued shortly. (*Id.*)

- On October 30, 2017, Mattress Firm filed a lawsuit against Colliers in Harris County, Texas (the "Underlying Lawsuit"), alleging fraud, bribery, and a kickback scheme related to real estate brokerage services.  (Doc. 34-10 at 3.)

- On January 5, 2018, Maxum sent Colliers a reservation of rights letter, in which it stated that it "will honor its defense obligations to Colliers [in the Underlying Lawsuit] under Policy No. PFP-6023915-02 under a reservation of rights."  (Doc. 34-7 at 2.) Maxum also reserved "the right to withdraw from defending Colliers . . . at any time during the Lawsuit and reserve[d] the right to refuse to indemnify . . . once additional facts or evidence are discovered that would merit a subsequent formal denial or disclaimer of coverage."[1]  (*Id.* at 22-23.)

---

[1] In its reservation of rights, Maxum also sought to reserve "the right to seek reimbursement" for its expenses arising from the "defense of potentially non-covered claims."  (Doc. 34-7 at 23.)  Colliers, in a subsequent letter, objected to Maxum's right to reimbursement because it "d[id] not agree to the creation

- On January 9, 2018, after Maxum assumed Colliers' defense in the Underlying Lawsuit, Colliers' broker asked Maxum how it planned to handle Lewis Brisbois' defense costs in the Underlying Lawsuit. (Doc. 86 ¶ 26.)  Having not received a response, on February 8, 2018, Colliers' broker again asked Maxum to advise on its defense costs.  (*Id.* ¶ 27.)

- On March 23, 2018, Maxum filed a declaratory judgment action against Colliers in this Court seeking a declaration as to whether the Mattress Firm Claim fell within the coverage of Colliers' Policy (the "Declaratory Judgment Action").[2]  (*Id.* ¶ 27.)

- As of June 5, 2019, Maxum had not paid any of the defense costs Colliers accrued in the Underlying Action.[3]  (*Id.* ¶ 30.)  On this date, Colliers sent Maxum a formal notice of bad faith, giving Maxum 60 days to pay Colliers' outstanding defense costs from the Underlying Lawsuit.  (*Id.*)

---

of any new right of reimbursement that was never part of the parties' original bargain."  (Doc. 74-14.)

[2] That case was presided over by Judge Orinda D. Evans (ret.).

[3] Maxum attributed this lack of payment to Colliers' alleged failure to cooperate with Maxum in providing information about its defense costs. (Doc. 86 at 13.)

- On September 9, 2019, Maxum paid Colliers a one-time sum of $286,010.43, representing what Maxum believed to be the reasonable attorneys' fees associated with defending Colliers in the Underlying Action. (*Id.* ¶ 32.) Maxum made no further payment for Colliers' defense costs.

- On November 5, 2019, Colliers filed the instant suit bringing two claims against Maxum: (1) a breach of contract claim premised on Maxum's alleged refusal to defend Colliers in the Underlying Lawsuit, and (2) a bad-faith refusal claim under O.C.G.A. § 33-4-6. (Doc. 1.)

- On April 24, 2020, in Maxum's prior Declaratory Judgment Action, the Court found that Colliers failed to timely report the Mattress Firm Claim to Maxum and, as a result, the claim was not covered under the Policy (the "Declaration of Non-Coverage"). (Doc. 34-10.)

In addition to the Policy with Maxum, Colliers had two other professional liability insurance policies—one with Liberty International Underwriters ("Liberty"), and one with Travelers Casualty and Surety Company of America ("Travelers"). (Doc. 78-1 at 4-5.) Colliers tendered the Mattress Firm Claim to both Liberty and Travelers. (*Id.*) All three of Colliers' professional liability

insurance policies contained an "Other Insurance" provision, stating that each policy shall only be in "excess" of any other insurance available to Colliers. (*Id.* at 13-15.)

In this lawsuit, Colliers contends that Maxum owed a duty to defend it in the Underlying Lawsuit and that Maxum breached that duty by paying only a fraction of the defense costs Colliers accrued prior to the Court's Declaration of Non-Coverage. According to Colliers, the relevant period during which Maxum owed this duty to defend was from June 29, 2017 (the date on which Colliers first reported the Mattress Firm Claim to Maxum) until April 24, 2020 (the date of the Declaration of Non-Coverage). Colliers claims that during this period, it actually incurred $1,658,937.35 in defense fees and expenses (Doc. 52-1), such that Maxum's payment of $286,010.43 was a drop in the bucket when compared to what Colliers was owed. Colliers seeks unpaid defense costs in the amount of $1,372,926.92. It further seeks $686,463.46 under O.C.G.A. § 33-4-6 for Maxum's alleged bad faith in this case.

Maxum denies the existence of a duty to defend, arguing that the Declaration of Non-Coverage terminated any alleged obligation it had to provide Colliers a defense. Maxum asserts that Colliers' claims are barred by the doctrines of *res judicata* and collateral estoppel, and that Colliers should have raised them as compulsory counterclaims in the earlier-filed litigation.

7

Maxum also argues that its reservation of rights did not create a contractual duty to defend and that the "Other Insurance" provisions in Colliers' policies operate to limit any recovery Colliers might obtain against Maxum.  Finally, Maxum seeks summary judgment in its favor on the bad faith claim.

## II.      Relevant Procedural History

On December 22, 2020, Maxum filed a motion for summary judgment. (Doc. 34.)  After that motion was fully briefed, the Court granted the parties a discovery extension and extended the time to file dispositive motions.  (Docs. 55, 61.)  On July 7, 2021, the Court denied Maxum's motion for summary judgment without prejudice, allowing it to renew the motion upon the close of extended discovery.  (Doc. 62.)[4]

On October 6, 2021, Maxum filed a motion for leave to amend its answer and affirmative defenses, seeking to add two affirmative defenses that were not originally included in its answer.  (Doc. 67.)  And on October 8, 2021, the parties filed cross motions for summary judgment.  (Docs. 69, 74.)  Those motions are fully briefed (Docs. 77, 78, 82, 84, 85, 87) and ripe for review.

---

[4] Discovery was extended to permit Maxum to explore the scope of Colliers' policies with other insurance companies and their effect, if any, on this case. Maxum claims that Colliers showed a lack of candor in discovery regarding its other insurance policies.  Colliers denies that allegation.

### III. Maxum's Motion for Leave to Amend Answer and Affirmative Defenses

Maxum seeks leave to amend its answer and affirmative defenses to: (1) add *res judicata* and collateral estoppel as affirmative defenses, and (2) add an affirmative defense stating that "Colliers' recovery is barred, in whole or part, by the existence of additional insurance policies, the 'Other Insurance' provisions of which are irreconcilable and require a *pro-rata* division of liability between Maxum and additional insurers." (Doc. 67 at 1-2.)  Maxum seeks to add these affirmative defenses pursuant to Fed. R. Civ. P. 15(a) because it relies on them in its motion for summary judgment.

Under Rule 15, a party may amend its answer before trial as a matter of course within 21 days of service.  Fed. R. Civ. P. 15(a).  If the time to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." *Id.*  Even so, leave to amend is "not an automatic right," and a district court may deny leave where substantial grounds exist for doing so. *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008).  Relevant to the case at hand, a district court may properly deny a motion to amend when the amendment would be futile.  *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010).

Here, as explained below, Maxum's *res judicata*, collateral estoppel, and "other insurance" arguments fail on the merits.  Thus, Maxum's proposed amendments are futile, and its motion for leave to amend is **DENIED**.[5]

## IV.   Cross Motions for Summary Judgment

In Georgia, an insurer's breach of its duty to defend gives rise to a breach of contract claim.  *See, e.g., S. Trust Ins. Co. v. Mountain Express Oil Co.*, 828 S.E.2d 455, 459 (Ga. Ct. App. 2019) (finding insurer liable for breach of the insurance contract when it wrongfully refused to defend a suit against its insured).  Colliers asks the Court for partial summary judgment on the issue of whether Maxum had a duty to defend under the Policy up until the Declaration of Non-Coverage.  If the Court finds that Maxum had such a duty, a jury will then determine whether Maxum breached the duty, and, if so, whether Colliers is entitled to damages.  Colliers also seeks to go to a jury on its statutory bad faith claim.  Maxum moves for summary judgment in its favor on both of Colliers' claims.

---

[5] Rule 16's good cause standard further weighs against Maxum's request to amend its answer at this late stage.  It is true that the Declaration of Non-Coverage (dated April 24, 2020) occurred after the agreed-upon deadline for amending pleadings (February 17, 2020).  Maxum, however, has failed to show good cause for its delay in seeking to clarify its answer to add *res judicata* and collateral estoppel defenses during the eighteen months following the April 24, 2020, Declaration of Non-Coverage.

## A. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

11

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* (citations omitted).

The same standard of review applies to cross-motions for summary judgment, but the Court must determine whether either party deserves judgment as a matter of law on the undisputed facts. *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242-43 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). Each motion must be considered "on its own merits, [with] all reasonable inferences [resolved] against the party whose motion is under consideration." *Id.* at 1243.

## B. Discussion

The Court is asked here to decide a narrow issue: whether Maxum owed a duty to defend Colliers in the Underlying Lawsuit such that Maxum must pay Colliers' pre-declaratory judgment defense costs. Before proceeding to the merits, the Court must first consider Maxum's argument that Colliers is precluded as a matter of law from bringing this case.

### 1. Procedural Barriers: Whether Colliers Is Barred from Bringing Its Claims

Maxum argues Colliers' claims could have been brought in the prior Declaratory Judgment Action and, as a result, Colliers should not be permitted to bring them in this action.  In so arguing, Maxum relies on three legal doctrines and/or rules: (1) *res judicata*, (2) collateral estoppel, and (3) the compulsory counterclaim provision of Fed. R. Civ. P. 13(a).  The Court will assess each in turn.[6]

### a. *Res judicata*

"The doctrine of *res judicata* prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Karan, Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262 (Ga. 2006).  A party asserting *res judicata* must satisfy three elements: "(1) identity of the cause of action, (2)

---

[6] In determining whether the doctrines of *res judicata* or collateral estoppel preclude all or part of Colliers' claims, the Court must apply Georgia's preclusion rules.  *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020) ("Because the district court in the prior declaratory judgment action exercised diversity jurisdiction, the district court here was required to determine the preclusive effect of that earlier federal judgment based on the rules of issue preclusion from the State in which the rendering court sat.")

identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Id.*

The parties do not dispute that the latter two requirements are satisfied here: Colliers and Maxum were both parties to the prior Declaratory Judgment Action, and the Court's order in that action constituted an adjudication on the merits by a court of competent jurisdiction. Thus, the applicability of the *res judicata* doctrine turns on whether an "identity of the cause of action" exists between this action and the Declaratory Judgment Action.

It is Maxum's position that its declaratory judgment claim in the prior case and Colliers' breach of contract claim in this case are, in reality, the same causes of action "because both the prior action and this action concern Maxum's obligations to pay for Colliers' defense of the Underlying Action." (Doc. 82 at 4.) Maxum further asserts that *res judicata* applies because Colliers' claims in this action involve the same facts as those in the prior action and could have been raised there.

For *res judicata* to act as a bar to a claim, "the cause of action in each suit must be *identical*." *Haley v. Regions Bank*, 586 S.E.2d 633, 638 (Ga. 2003) (emphasis added). A "cause of action" includes "the entire set of facts which give rise to an enforceable claim." *Id.* In considering the "entire set of facts," Georgia courts focus on the "wrong" that is asserted. *Coen v. CDC*

14

*Software Corp.*, 816 S.E.2d 670, 671 (Ga. 2018) (cautioning against "employing a broad, wide-ranging subject matter test" that would bar subsequent claims that merely relate to the subject-matter of a previous action). Where "some of the operative facts necessary to the causes of action are different in the two cases, the later suit is not upon the same cause as the former, although the subject matter may be the same, and even though the causes arose out of the same transaction." *Morrison v. Morrison*, 663 S.E.2d 714, 718 (Ga. 2008), *abrogated on other grounds by Gillam v. State*, 860 S.E.2d 543, 546 (Ga. 2021).

Here, Maxum's *res judicata* defense fails because its declaratory judgment claim in the prior action and Colliers' claims in this action are not identical. There are essential facts necessary to the current action that were not present in the earlier action. Most notably, Maxum's refusal to pay the full amount of Colliers' defense costs in the Underlying Lawsuit—which is the "wrong" that Colliers asserts in its breach of contract claim in this suit—did not occur until over one year after Maxum filed the prior Declaratory Judgment Action. At the time Maxum filed its Declaratory Judgment Action in March 2018, it had made no coverage denial, had not sought to rescind its reservation of rights, and was purportedly still attempting to work with Colliers in paying its defense costs. The key event that triggered Colliers'

breach of contract claim was Maxum's September 2019 payment of only $286,010.43 and its accompanying refusal to pay anything more for Colliers' defense costs.  Up until that point, Maxum had made no apparent refusal to cover the defense costs it assumed in its January 2018 reservation of rights letter.  Maxum's course of conduct in this regard provides essential facts in this case that did not occur until months after the commencement of the Declaratory Judgment Action.

Additionally, and as further discussed below, the adjudication on the merits in the earlier-filed case does not resolve the claim presented here.  True, Judge Evans ruled that Colliers waited too long to notify Maxum of the Mattress Firm claim and accordingly determined that Maxum accordingly had no duty to defend under the Policy.  The instant case, however, focuses on a related (but not an identical) claim: whether an insurer retains a duty to pay pre-declaratory judgment defense costs for the discrete period before a court determines the insurer has no duty to defend.  That specific claim – which appears to be one of first impression in this jurisdiction – was neither briefed nor explicitly decided in the prior action before Judge Evans.  Neither was the

bad faith claim adjudicated in the prior action.  For the foregoing reasons, *res judicata* does not act as a bar to Colliers' claims in this case. [7]

### b. Collateral Estoppel

The doctrine of collateral estoppel "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Karan*, 629 S.E.2d at 262.  Unlike *res judicata*, collateral estoppel does not require identity of the claim.  *Id.*  Collateral estoppel's preclusive effect applies to "those issues that *actually were litigated and decided* in the previous action, or that *necessarily had to be decided* in order for the previous judgment to have been rendered." *Id.* (emphasis added).  Thus, "[c]ollateral estoppel will not bar consideration of an issue that has not *actually been decided*." *Cost Mgmt. Grp., Inc. v. Bommer*, 755 S.E.2d 537, 542 (Ga. Ct. App. 2014) (emphasis in original).

---

[7] Colliers raises the declaratory judgment exception to *res judicata* as an additional basis on which to find that *res judicata* does not apply here. Under this exception, "the preclusive effect of a prior action solely for declaratory relief is limited to the matters declared and to any issues actually litigated and determined in the action." *Seminole Tribe of Fla. v. Biegalski*, 757 F. App'x 851, 857 (11th Cir. 2018); *see also Empire Fire and Marine Ins. Co. v. J. Transport, Inc.*, 880 F.2d 1291 (11th Cir. 1989).  Here, it is undisputed that the action before Judge Evans sought only declaratory relief. Maxum does not meaningfully respond to Colliers' declaratory judgment exception argument, and the Court finds that it provides an alternative basis on which to deny Maxum's motion.  (Doc. 82, 84, 87.)

The issue in this case is whether Maxum was obligated, pursuant to its reservation of rights, to pay Colliers' pre-declaration defense costs in the Underlying Lawsuit.  To determine the applicability of collateral estoppel to this case, the Court must discern whether this issue was actually decided or necessarily had to be decided in the previous Declaratory Judgment Action.

The central issue in the Declaratory Judgment Action was whether Colliers properly and timely reported the Mattress Firm Claim to Maxum pursuant to the Policy.  *See Maxum Indem. Co. v. Colliers Int'l – Atlanta, LLC*, 1:18-cv-1236-ODE, 2020 WL 10071021, at *4 (N.D. Ga. Apr. 24, 2020), *vacated on other grounds by Maxum Indem. Co. v. Colliers Int'l – Atlanta, LLC*, 861 F. Appx. 279 (11th Cir. 2021).  The Court found, in a section of the order titled "Duty to Defend," that Colliers did not timely report the claim, and, consequently, the Mattress Firm Claim was not covered.  *Id.* at *5.  The Court further stated that Maxum owed Colliers "no duty to defend."  *Id.* at *8. Considering the Court's conclusion in the Declaratory Judgment Action, Maxum now contends that collateral estoppel bars Colliers' current suit because "the issue of whether any defense obligations were owed to Colliers under the Maxum Policy has been adjudicated."  (Doc. 74-2 at 13.)

There is no question that the prior Declaration of Non-Coverage order actually decided the issue of underlying coverage for the Mattress Firm Claim

and found "no duty to defend" in the Underlying Lawsuit.  However, this prior order did *not* decide, or even address, the issue at the heart of this litigation—the scope of Maxum's obligations with respect to the pre-declaration defense it assumed via its reservation of rights.  Thus, the prior Declaration of Non-Coverage does not act as a bar to Colliers raising this issue in the current litigation.  This conclusion is warranted for two reasons.

First, the Declaration of Non-Coverage order addresses only the question of underlying coverage and contains no discussion of Maxum's reservation of rights or Colliers' defense costs in the Underlying Lawsuit.  The absence of such a discussion follows from the fact that the parties did not raise the issue of Colliers' pre-declaratory judgment defense costs in their Declaratory Judgment Action briefs.  (*See* Doc. 34-9.)

Second, case law in an analogous context suggests that a court's declaration of non-coverage does not necessarily decide the issue of whether an insurer is obligated to pay the insured's pre-declaration defense costs.  Three recent cases in this district involving recoupment demonstrate this point. *Cont'l Cas. Co. v. Winder Labs.*, 535 F. Supp.3d 1321 (N.D. Ga. 2021); *Am. Fam. Ins. Co. v. Almassud*, 522 F. Supp.3d 1263 (N.D. Ga. 2021); *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments LP*, No. 1:20-cv-3529-TWT, 2022 WL 992581 (N.D. Ga. Apr. 1, 2022).  In each of these cases, the Court concluded

that an insurer that assumes an insured's defense through a reservation of rights might be stuck with the bill for some of an insured's defense costs *even if* it obtains a subsequent no-coverage declaration finding no duty to defend. For example, the insurer in *Winder Laboratories* obtained a declaratory judgment specifically stating that the insurer "had no duty to defend or indemnify [the insureds] in connection with" an underlying lawsuit." 535 F. Supp.3d at 1324.   Nevertheless, the Court found that, absent a recoupment provision in the insurance policy, the insurer who issued an otherwise valid reservation of rights could not recoup its pre-declaration defense costs.  *Id.* at 1326.   Although recoupment is not at issue in the case at hand, *Winder Laboratories* suggests that adjudication of the duty-to-defend question does not *necessarily* resolve the issue of whether an insurer must pay an insured's pre-declaration defense costs pursuant to a reservation of rights.  In our case, the issue of whether Maxum had a pre-declaration duty to defend Colliers was not decided, or even addressed, in the previous Declaratory Judgment Action. Thus, collateral estoppel does not bar Colliers' claims in this case.

### c.  Rule 13(a) Compulsory Counterclaims

Fed. R. Civ. P. 13(a) provides that "[a] pleading must state as a counterclaim any claim that—*at the time of its service—the pleader has* against an opposing party if the claim: (A) arises out of the transaction or occurrence

that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." (Emphasis added.)  "Compulsory counterclaims which are not brought are thereafter barred." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 755 (11th Cir. 2002), *abrogated on other grounds by Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010).  The objectives of Rule 13(a) are to provide complete relief to the parties in a single suit, to promote judicial economy, and to avoid the inefficiencies of piecemeal litigation. *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 380 (S.D. Ala. 2016).  Two claims arise out of the same transaction or occurrence when they bear a "logical relationship" to one another, or, in other words, when "the same operative facts serve as the basis of both claims." *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985).

Here, Colliers' claims bear logical relationships to Maxum's claims in the Declaratory Judgment Action and, therefore, arise from the same transaction or occurrence.  The question at hand, then, is whether Colliers "had" the potential counterclaims at issue "at the time of [the complaint's] service" in the earlier-filed case.  Fed. R. Civ. P. 13(a).

The Court finds that Colliers did not have its breach of contract claim at the time Maxum served its Declaratory Judgment Action on Colliers in May 2018.[8]  In Georgia, a breach of contract right of action "has its inception upon the breach of duty."  *Effingham County v. Roach*, 764 S.E.2d 600, 609 (Ga. Ct. App. 2014), *overruled on other grounds by Rivera v. Washington*, 784 S.E.2d 775 (Ga. 2016).   Here, the basis for Colliers' breach of contract claim is Maxum's refusal in September 2019 to pay anything more than $286,010.43 for Colliers' defense costs in the Underlying Lawsuit.  (Compl., Doc. 1 ¶ 34 ("Maxum has breached the Policy and its January 5, 2018, written agreement by wrongfully refusing to pay the full amount of Colliers' defense costs in the Underlying Action.").)  Up until approximately June 2019 (when Colliers sent its bad faith notice), Maxum had agreed to undertake a defense and was purporting to work with Colliers in defending against the Underlying Lawsuit. At the time Maxum served Colliers with the Declaratory Judgment Action in

---

[8] Maxum filed its original Declaratory Judgment Action complaint on March 23, 2018.  Before Colliers filed an answer, Maxum served an amended complaint on May 30, 2018.  (Docs. 78-1 at 9**,** 34-8.)  This amended complaint became the operative complaint in the Declaratory Judgment Action.  For purposes of determining whether Colliers "ha[d]" its current claims when it was served with the prior suit, the Court views the facts as they were in May 2018.  But the analysis would not differ if the Court used the earlier date of March 23, 2018.

May 2018, Maxum had not yet refused to pay the full amount of Colliers' defense costs, which is when Colliers argues Maxum breached its duty to defend.  Colliers therefore did not "have" its breach of contract and bad faith claims within the meaning of Rule 13 at the time the prior action was served.  As a result, those claims were not compulsory counterclaims in the prior action.

### 2. The Merits of the Breach-of-Contract Claim: Whether Maxum Is Liable for Colliers' Pre-Declaration Defense Costs from the Underlying Lawsuit

The merits of the parties' cross motions for summary judgment turn on one key issue: whether the Court's April 24, 2020, Declaration of Non-Coverage retroactively relieved Maxum of its duty to defend such that it is not liable for any portion of Colliers' pre-declaration defense costs.[9]  This appears to be an issue of first impression.  The parties have not identified, and the Court has not found, any binding authority that definitively resolves the issue under Georgia law.  For guidance, therefore, the Court looks to principles of Georgia insurance law, analogous cases applying Georgia law in the insurance context, and persuasive authority from other jurisdictions.

---

[9] Whether Maxum *breached* its duty to defend is not at issue at this stage. Colliers seeks partial summary judgment on the existence of a duty to defend and a jury trial on whether Colliers breached that duty.  Maxum argues that no duty existed in the first place and, therefore, there can be no breach.

### a. Guiding Principles of Georgia Insurance Law

Four well-established principles of Georgia insurance law provide the framework for the Court's analysis in this case.

First, in Georgia, an insurer's duty to defend is a separate and independent obligation that is broader than the duty to indemnify. *See Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315, 317 (2007); *see also Am. Fam. Life Assurance Co. v. U.S. Fire Co.*, 885 F.2d 826, 831 (11th Cir. 1989) ("Although the duty to defend is coextensive with coverage, the obligation to defend is a separate contract right that exists independent of the insurer's liability for the face value of the policy.").  This is a fundamental tenet of Georgia insurance law, which Maxum acknowledged in its reservation of rights.[10]

Second, "the duty to defend exists if the [insurance] claim potentially comes within the policy."  *Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565-66 (1997) (emphasis added).  In other words, "[i]f the facts as alleged in the complaint even arguably bring the occurrence within

---

[10] (Doc. 34-7 at 16 ("The question of whether Maxum has a duty to defend is separate and independent from the question of whether Maxum would be required to indemnify Colliers . . . for any damages recovered against Colliers . . . in the Lawsuit, because an insurer's duty to defend is broader than its duty to indemnify.").)

the policy's coverage, the insurer has a duty to defend the action." *Hoover v. Maxum Indem.*, 730 S.E.2d 413, 418 (Ga. 2012) (citation omitted).

Third, the Georgia Supreme Court's decision in the *Hoover* case provides three, mutually exclusive options to an insurer facing a decision about whether to provide coverage on an insured's claim. When a lawsuit is filed against an insured, the insurer's options are as follows:

> First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. Or, third, the insurer can defend under a reservation of rights.

*Hoover*, 730 S.E.2d at 416. With respect to the last *Hoover* option, "[a] reservation of rights is a term of art designed to allow an insurer to provide a defense while still preserving the option to later litigate and ultimately deny coverage." *Am. Safety Indem. Co. v. Sto Corp.*, 802 S.E.2d 448, 453 (Ga. Ct. App. 2017). Here, Maxum chose the third *Hoover* option. When confronted with the Mattress Firm Claim against Colliers, instead of denying coverage outright, Maxum agreed to "honor its defense obligations to Colliers under a reservation of rights." (Doc. 34-7 at 22.)

Fourth, under Georgia law, "[a]n insurer cannot both deny a claim outright and attempt to reserve the right to assert a different defense in the future." *Hoover*, 730 S.E.2d at 416. Thus, "a reservation of rights is only

available to an insurer who undertakes a defense while questions remain about the validity of the coverage." *Id.* Put another way, an insurance company, such as Maxum, cannot simultaneously reserve rights and fail to defend. Important public policy considerations undergird *Hoover*'s approach in this regard and represent a careful balancing of interests between insurer and insured.[11]

### b. Maxum's Argument That It Never Owed a Duty to Defend in the First Place Because of the Declaration of Non-Coverage

In this case, Colliers contends that Maxum did exactly what it could not do under the principles just articulated – that is, Maxum simultaneously reserved rights *and* it failed, at least in certain respects, to defend Colliers in the Mattress Firm litigation. Maxum, for its part, argues that *Hoover* is inapposite, and that all this Court needs to do to resolve the breach of

---

[11] A reservation of rights "exists to protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation or to file a declaratory judgment action to determine its obligations." *Hoover*, 730 S.E.2d at 406. The reservation of rights balances interests, providing the insured with a defense, while allowing the insurer to control the defense, avoid claims of breach of contract and bad faith, and avoid a settlement without its consent.

contract claim is to consider that Judge Evans issued a Declaration of Non-Coverage regarding the Policy at issue.

In the prior Declaratory Judgment Action, Maxum sought summary judgment on the ground that Colliers failed to timely report the Underlying Lawsuit pursuant to the Policy and, consequently, that Maxum owed no duty to defend or indemnify Colliers. *Maxum Indem. Co.*, 2020 WL 10071021, at *4. The Court granted Maxum's motion, finding that Colliers reported the Mattress Firm Claim outside of the Policy period and therefore was not entitled to coverage. *Id.* at *5. The Court ultimately concluded that because Colliers' claim was not covered under the Policy, Maxum owed Colliers "no duty to defend." *Id.* at *8.

The parties concur that under Georgia law, an insurer that agrees to defend under a reservation of rights must actually defend the insured. There further is no question that the Court, in finding that the Mattress Firm Claim against Colliers was not covered by the Policy, determined that Maxum owed no duty to indemnify Colliers against any judgment, and no longer owed a duty to defend Colliers going forward. But did Judge Evans' order retroactively eliminate the pre-declaration duty to defend, such that – even if Maxum breached that duty by significantly underfunding plaintiff's defense – Colliers should be out of luck here?

While Georgia courts have not addressed the exact issue raised in this case, courts in at least three other states have adopted the position that Colliers urges this Court to accept here.[12]   The Supreme Court of Massachusetts, for example, expressly found that "[a] declaratory judgment of no coverage . . . does not retroactively relieve the primary insurer of the duty to defend; it only relieves the insurer of the obligation to continue to defend after the declaration." *Metro. Prop. and Cas. Ins. Co. v. Morrison*, 951 N.E.2d 662, 668 (Mass. 2011).   The Supreme Court of Pennsylvania found the same. *Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 542 (Pa. 2010) ("If the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend.  The court's resolution of the question of coverage does not, however, retroactively eliminate the insurer's duty to defend the insured during the period of uncertainty.")   The Washington Supreme Court similarly held as follows:

> After obtaining a declaration of noncoverage, an insurer will not be obligated to pay *from that point forward*.  Any other rule would be at odds with our observation that, under a reservation of rights

---

[12] Maxum correctly observes that these out-of-jurisdiction cases concerned whether an insurer could recoup payments for defense costs the insurer already paid.  (Doc. 82 at 13-14.)  The cases are nevertheless instructive here.  As Colliers states: "If an insurer cannot recoup defense costs paid under a reservation of right by relying on a subsequent declaration of non-coverage, then *a fortiori*, it cannot fail to pay defense costs while it operates under a reservation of rights."  (Doc. 87 at 13.)

defense, the insured *receives* the defense promised—at least until determination of noncoverage.

*Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 694 (Wash. 2013) (emphasis in original) (citations omitted).[13]

These cases are consistent with Georgia law and rely in part on policy concerns expressed by the Georgia Supreme Court in *Hoover*. For example, the *Immunex* court reasoned that, if an insurer could reserve its rights without taking on responsibility for the costs of defense while awaiting a court's coverage determination, it would unfairly tip the scales in favor of the insurer. *Id.* The Washington Supreme Court found that "[t]his 'all reward, no risk' proposition renders the *defense* portion of a reservation of rights defense illusory." *Id.* (emphasis in original).

This Court concurs. If credited, Maxum's argument that a declaration of non-coverage retroactively eliminates an insurer's duty to defend could have profound implications. An insurer pursuing the third *Hoover* option could be incentivized to delay defense payments and/or underpay defense costs, while hoping for a forthcoming declaration of non-coverage. As Colliers puts it, if

---

[13] *See also* 14 *Couch on Ins.* § 200:48 (2022) ("When an insurer's duty to defend the insured is extinguished before the conclusion of the action by a showing that no claim can in fact be covered, it is extinguished only prospectively and not retroactively.").

Maxum is correct, then the duty to defend becomes coterminous with the duty to indemnify. And that is contrary to the general rule in Georgia that the duty to defend is broader than duty to indemnify.

Colliers' argument is further supported by analogous cases from this Court in the insurance recoupment context. These cases suggest that the question of (a) whether an insurer operating under a reservation of rights must pay for defense costs accrued *after* a declaration of non-coverage, is distinct from (b) whether that insurer must pay for defense costs accrued *before* obtaining such a declaration. On the one hand, when an insurer obtains a declaration of non-coverage, that insurer is no longer obligated to provide a defense for the insured going forward. *See, e.g., Am. Fam. Ins. Co. v. Almassud*, 522 F. Supp.3d 1263, 1268 (N.D. Ga. 2021) (finding an insurer was relieved of its duty to defend a claim once the court determined the claim was not covered). But on the other, if an insurer has issued a reservation of rights and has already spent money to defend the insured, the insurer is not always entitled to recoup that money after the declaration of non-coverage is entered. Specifically, if a court finds that the insurer does not have a right to recoupment, the insurer may remain liable for the insured's pre-declaration legal costs — *even if* the declaration found the insurer to have no duty to defend. *Cont'l Cas. Co. v. Winder Labs.*, 535 F. Supp.3d 1321, 1324, 1327 (N.D.

Ga. 2021) (finding an insurer could not recoup its defense costs where it did not contract for that right, even after the insurer obtained a judgment stating that the insurer "had no duty to defend or indemnify" the insured in connection with the underlying lawsuit); *Almassud*, 522 F. Supp.3d at 1269 (same); *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments LP*, No. 1:20-cv-3529-TWT, 2022 WL 992581, at *5 (N.D. Ga. Apr. 1, 2022) (same).

In this case, recoupment is admittedly not at issue because Maxum does not seek it as a remedy. But the recoupment line of cases undercuts Maxum's argument that a declaration of non-coverage is necessarily the end of the story in ascertaining the scope of a pre-declaration duty to defend. If a declaration of non-coverage retroactively eliminated the duty to defend, there would be no reason to permit an insured to keep insurance payments it received before a declaration of non-coverage. At the very least, the recoupment cases show that a declaration of non-coverage may or may not provide the final word on whether an insurer is required to pay pre-declaration defense costs. [14]

---

[14] There is a split of authority in this Court as to whether an insurer may unilaterally reserve a right to recoupment where none is provided in the policy. *Compare Ill. Union Ins. Co. v. NRI Constr. Inc.*, 846 F. Supp.2d 1366, 1377 (N.D. Ga. 2012) (finding an insurer may unilaterally create a right to recoupment through a valid reservation of rights), *with Winder Labs.*, 535 F. Supp.3d at 1326-27 (finding the opposite). The Court need not wade into this debate here because Maxum does not assert a right to recoup. Further, like *Winder Laboratories*, *Almassud*, and *Mt. Hawley*, *NRI Construction* suggests

The Court ultimately determines that Maxum owed a duty to defend Colliers in the Underlying Lawsuit between June 29, 2017, and April 24, 2020, and that Maxum was not retroactively relieved of that duty by the Declaration of Non-Coverage.  The Court reaches this conclusion based on application of bedrock Georgia insurance principles, analogous cases in other jurisdictions, and the underlying policy considerations that inform the case law.  Permitting Maxum to enjoy the benefits of a reservation of rights — namely, retention of the right to contest coverage while avoiding a bad faith claim — without having to actually pay reasonable amounts for the defense it assumed would upend the balance between insurer and insured rights that Georgia courts have carefully crafted.  In issuing its reservation of rights, Maxum bound itself to the third *Hoover* option — "defend[ing] under a reservation of rights." *Hoover*, 730 S.E.2d at 416.  This option allowed Maxum to "preserv[e] the option of litigating and ultimately denying coverage," but it also obligated Maxum to assume Colliers' defense in the first place.  *Id.*  A subsequent declaration of non-coverage does not retroactively unwind that obligation.

---

that a declaration of non-coverage does not itself erase an insurer's liability for the pre-declaration defense costs it assumed; rather, a valid right to recoupment must be in place for the insurer to recover its defense costs.

### c. Whether Maxum's Duty to Defend was a Contractual Obligation Under the Policy

Lastly, Maxum contends that it did not breach any contractual duty to defend because the reservation of rights letter was not a contract and therefore could not create binding obligations on the parties.  This argument is unconvincing.  True, an insurer generally cannot create a *new* right that does not exist in the policy through a unilateral reservation of rights.  *See, e.g., Winder Labs.*, 535 F. Supp.3d at 1326 (explaining that when an insurer issues a reservation of rights, "[t]he insurer should not be able to unilaterally alter the terms of an insurance policy" because "the right must be preexisting to be reserved; otherwise an entirely new right is created").  Here, however, Colliers' right to receive a defense under the Policy was not a "new" right "created" by the reservation of rights.  The Policy itself provides that Maxum "will have the right and duty to defend any 'insured' against any 'suit' seeking those 'damages.'"  (Doc. 1 at 21.)   "[T]he duty to defend is determined by the *contract*[,] and since the contract obligates the insurer to defend claims asserting liability under the policy[,] even if groundless, the allegations of the complaint [against the insured] are looked to determine whether a liability covered by the policy is asserted." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (emphasis added) (citations omitted).

Therefore, Maxum's duty to defend arose from the Policy, not the reservation of rights letter, and the contract that Maxum allegedly breached was the Policy, which it does not deny was a binding agreement.

For the foregoing reasons, the Court finds that, in issuing a reservation of rights, Maxum assumed a duty to defend Colliers in the Underlying Lawsuit, and the subsequent Declaration of Non-Coverage did not retroactively erase Maxum's pre-declaration defense obligations.

### 3. "Other Insurance" Provisions

Maxum argues that, to the extent it is liable in this action, it should only be required to pay its pro rata share of Colliers' defense costs because Colliers also had insurance policies with two other insurers, Travelers and Liberty. These two other companies are not parties in this case.

Colliers and Maxum appear to agree that all three policies contain "Other Insurance" provisions, which provide that if the insured has other policies in place, the insurer will only be required to provide "excess" insurance — i.e., what the other policies do not cover. These provisions, Maxum argues, are irreconcilable with one another. And "when two insurance policies covering the same risk both contain 'other insurance' clauses that cannot be reconciled, those clauses cancel each other out and the insurers share in liability pro rata."

*Am. Cas. Co. of Reading v. MAG Mut. Ins. Co.*, 185 F. App'x 921, 925 (11th Cir. 2006).

While no party quarrels with the foregoing, general legal principle, here the Court is asked to consider a more discrete question: how to approach other insurance provisions in a case in which the other insurers are not parties to the litigation. This wrinkle complicates matters for Maxum because Maxum does not point to any authority allowing the Court to limit a plaintiff's recovery against a defendant-insurer based on plaintiff's other insurance policies with *non-party* insurers. The cases Maxum cites do, as Maxum states, recognize an insurer's right to contribution from other insurers where policies contain irreconcilable "Other Insurance" provisions. However, in each of these cases, the second insurer from whom the first insurer sought contribution was also a party to the litigation in question. *Am. Cas. Co.*, 185 F. App'x at 928 (allowing pro rata distribution of liability in contribution action between two insurers); *Allied Prop. & Cas. Ins. Co. v. Bed Bath & Beyond, Inc.*, No. 12-cv-1265-RWS, 2014 WL 1292456, at *10 (N.D. Ga. March 31, 2014) (requiring insurer parties to an action to share, pro rata, the costs of defending an insured); *St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co.*, 1:06-cv-2074-JOF, 2009 WL 789612, at *8-10 (N.D. Ga. March 23, 2009) (discussing pro rata allocation of costs in a contribution action between insurers).

In a case in which the Court is asked to adjudicate the rights of an insured only as they relate to one insurer, Maxum has not provided any case law or other authority showing that a Court can limit that insured's recovery based on its policies with non-party insurers.  Further, Maxum has not sought to join the other insurance companies as parties, even though it became aware some time ago about the "other insurance" issue.  Neither has Maxum filed a third-party complaint to seek contribution from the other insurers.

For the foregoing reasons, Maxum has failed to show that an "other insurance" provision applies to limit Colliers' potential recovery in this case. The Court makes no determination as to whether Maxum can seek contribution from Colliers' other insurers in some other proceeding.

### 4. Colliers' Bad-Faith Claim Under O.C.G.A. § 33-4-6

Colliers brings a bad faith claim under O.C.G.A. § 33-4-6.  That statute provides in pertinent part:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33-4-6(a).

36

To support a bad faith claim under O.C.G.A. § 33-4-6, "the insured bears the burden of proving that the refusal to pay the claim was made in bad faith." *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 61-62 (Ga. Ct. App. 2015). To do so, the insured must prove: "(1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith." *Id.* The parties do not dispute that Colliers made a pre-suit demand for payment in satisfaction of the second element. The parties disagree, however, as to the first and third elements of Colliers' statutory bad faith claim.

The first element of a bad faith claim under O.C.G.A. § 33-4-6 requires the insured to show that the claim is "covered under the policy." *Id.* Maxum urges the Court to find that Colliers cannot recover for bad faith in this case because, pursuant to Judge Evans' order in the earlier case, there was no coverage for the Mattress Firm Claim under the Policy. Certainly, Maxum was justified in its refusal to pay Colliers' defense costs incurred after the Declaration of Non-Coverage. However, as the Court already determined, Maxum had a contractual duty to defend Colliers prior to obtaining the Declaration of Non-Coverage such that Colliers' claim in that regard was "covered under the policy." *See Transp. Ins. Co. v. Piedmont Constr. Grp., LLC*,

37

686 S.E.2d 824, 830 (Ga. Ct. App. 2009) (finding an insurer's refusal to defend an insured pursuant to its duty to defend to result in a loss "covered by the policy"). Maxum appears to acknowledge this fact in its own reply brief, stating that "[t]o the extent Maxum owes any additional defense fees beyond the sums already paid, this would be a *claim under the Maxum Policy*." (Doc. 85 at 15 (emphasis added).) Because Colliers' pre-declaration defense costs were "covered under the policy," Colliers satisfies the first element of its statutory bad-faith claim.

The third element requires the plaintiff to demonstrate that "the insurer's failure to pay was motivated by bad faith." *Neisler*, 779 S.E.2d at 61-62. Georgia courts define "bad faith" as "any frivolous and unfounded refusal in law or in fact to pay according to the terms of the policy." *Amica Mut. Ins. v. Sanders*, 779 S.E.2d 459, 463 (Ga. Ct. App. 2015). The question of whether an insurer has acted in bad faith is generally reserved for the jury. *Homick v. Am. Cas. Co.*, 433 S.E.2d 318, 319 (Ga. Ct. App. 1993). However, the issue can be decided as a matter of law in favor of the insurer when "there is no evidence of unfounded reason for the nonpayment," or when the question of the insurer's liability is close. *Id.* (internal quotations omitted.) Good faith is determined by the reasonableness of nonpayment of a claim. *Id.*

Maxum seeks summary judgment on this element, arguing that it did not act in bad faith when it paid only a portion of Colliers' pre-declaration defense costs, despite Colliers' numerous requests (and later, demands) for more money.  The question of whether Maxum acted in bad faith is intertwined with the related question of whether Maxum breached its duty to defend by paying only $286,010.43 of Colliers' defense costs.  If a jury concludes that this payment on September 9, 2019, satisfied Maxum's defense obligations under the Policy, then the bad faith claim necessarily fails.  Conversely, if a jury finds that Maxum *did* breach its duty to defend, there is some evidence in the record that could allow a reasonable jury to find bad faith.  For example, Maxum was arguably dilatory in issuing its initial coverage decision[15] and in ultimately making its one-time payment for what it contends were reasonable attorneys' fees for the Underlying Lawsuit.[16]  On the facts of this case, a reasonable jury could conclude that Maxum slow-walked its coverage decision and then

---

[15] Over six months passed from the date on which Colliers first informed Maxum of the Mattress Firm Claim and the date on which Maxum issued its reservation of rights.  The record shows that Colliers' broker repeatedly contacted Maxum requesting a coverage decision during this period.  (Doc. 86 ¶¶ 7, 12-13, 16-18; Doc. 34-7.)

[16] Maxum made its first and only payment for the defense costs it assumed more than two years after Colliers tendered the Mattress Firm Claim to it. (Doc. 86 ¶ 32.)

underpaid Colliers for its defense costs in anticipation of a forthcoming declaration of non-coverage. Because Maxum did not have a right to recoupment, Maxum likely understood that it probably would not be reimbursed for pre-declaration legal fees it advanced on Colliers' behalf, even if it obtained a no-coverage determination. A jury could find that this inability to recoup defense costs may have given Maxum a reason to drag its feet in paying the legal costs necessary to defend Colliers in the Underlying Lawsuit. (This Court takes no position on whether Maxum did, in fact, delay defense payments, but merely observes that a jury could find it did.) In view of the circumstances of this case, a question of material fact remains as to whether Maxum's refusal to pay more than $286,010.43 for Colliers' defense costs was made in bad faith.

## V.    Conclusion

For the foregoing reasons, Plaintiff Colliers International – Atlanta, LLC's Motion for Partial Summary Judgment (Doc. 69) is **GRANTED**, and Defendant Maxum Indemnity Company's Motion for Leave to Amend its Answer and Affirmative Defenses (Doc. 67) and Motion for Summary Judgment (Doc. 74) are **DENIED**. Maxum owed a duty to defend Colliers under its reservation of rights until April 24, 2020.

A trial for this matter is scheduled to begin on December 12, 2022.  By November 28, 2022, the parties shall prepare and submit a consolidated pretrial order pursuant to Local Rule 16.4.  Motions in limine shall be due at 12:00 p.m. on December 1, 2022.  Responses to motions to limine shall be due at 12:00 p.m. on December 6, 2022.  The pretrial conference shall take place on December 8, 2022.

**SO ORDERED** this 7th day of November, 2022.

SARAH E. GERAGHTY
United States District Judge